UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | | | |
|---|---|---|---|---|
| IN RE: | SHEKIMA LEWIS | : | Chapter 13 | |
| | | : | | |
| | Debtor(s) | : | Bky. No. 04-36778ELF | |

| | | | | |
|---|---|---|---|---|
| IN RE: | JAMES NESMITH | : | Chapter 13 | |
| | | : | | |
| | Debtor(s) | : | Bky. No. 04-34214ELF | |

# MEMORANDUM OPINION

BY: ERIC L. FRANK, United States Bankruptcy Judge

## I. INTRODUCTION

The above-captioned chapter 13 bankruptcy cases were dismissed prior to confirmation of each debtor's chapter 13 plan. In each case, the law firm of Jenkins & Clayman ("J&C"), served as counsel for the Debtor and requested that the court direct the chapter 13 trustee ("the Trustee") to make a distribution to J&C on account of unpaid counsel fees allegedly earned by J&C in the course of the bankruptcy representation. The source of the requested distribution is money on account with the Trustee derived solely from the chapter 13 plan payments paid by each Debtor prior to the dismissal of the case. The Trustee has opposed the motions filed by J&C.

In this Memorandum Opinion, I will explain why I believe that J&C is entitled to the relief that it has requested in In re Lewis, Bky. No. 04-36778 ("Lewis"), but is not entitled to the relief in In re Nesmith, Bky. No. 04-34214 ("Nesmith").

## II. PROCEDURAL HISTORY

### A. Lewis

Shekima T. Lewis  filed a voluntary petition under chapter 13 of the Bankruptcy Code on December 20, 2004.[1] In the statement filed pursuant to Fed. R. Bankr. P. 2016(b), J&C disclosed the following:

> 1.        . . .
>
> For legal services, I have agreed to accept.................................... $1,986.00
> Prior to the filing of this statement I have received...................... $ 306.00
>           Balance
>           Due................................................................................................$1,680.00
>           . . .
>
> 5. In return for the above fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:
>
>> a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
>>
>> b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
>>
>> c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
>>
>> d. Representation of the debtor in adversary proceedings and other contested bankruptcy matters.
>>
>> e. Other: $194 filing fee has been paid
>
> 6. By agreement with the debtor(s), the above-disclosed fee does not include the following services:  . . . .[2]

---

[1] The court may take judicial notice of the docket and the content of the bankruptcy schedules and other documents filed in the case for the purpose of ascertaining the timing and status of events in the case and facts not reasonably in dispute. See Fed. R. Evid. 201; In re Scholl, 1998 WL 546607, at *1 n. 1 (Bankr. E.D. Pa. Aug. 26, 1998). See also In re Indian Palm Associates, 61 F.3d 197, 205 (3d Cir. 1995).

[2] No excluded services were identified in Paragraph 6 of the 2016(b) Statement.

The Debtor's chapter 13 plan was primarily designed to cure a default on a lease of

residential real property, estimated in the plan to be approximately $2,700, while the Debtor

made post-petition lease payments directly to the lessor.  The plan also provided for an

assumption of the lease.  See 11 U.S.C. §1322(b)(7).

According to the docket, the major events in the bankruptcy case were:

- two separate  Motions to Dismiss filed by the Trustee, the second of which
  was originally scheduled for June 28, 2005, but was repeatedly continued to
  July 26, 2005, August 16, 2005, September 6, 2005, September 20, 2005,
  November 1, 2005 and November 22, 2005;

- a Motion for Relief from the Automatic Stay filed by the lessor, which was
  granted by the court by order docketed April 6, 2005.

On September 19, 2005, J&C filed a Motion to Approve the Distribution of Pre-

Confirmation Payments Held by the Chapter 13 Standing Trustee to Debtor's Counsel for

Outstanding Legal Fees ("the Lewis Motion").  The Lewis Motion was heard by the court on

November 22, 2005, the same day that the court held a hearing on the Trustee's Motion to

Dismiss.  Following the hearing, orders were entered on November 23, 2005 dismissing the

Debtor's chapter 13 case and denying the Lewis Motion.

On November 29, 2005, J&C filed a Motion Requesting that the Standing Chapter 13

Trustee Be Directed to Hold All Pre-Confirmation Funds on Hand Pending Appeal.[3]  On

December 1, 2005, J&C filed a Notice of Appeal with respect to the bankruptcy court's denial of

---

[3] The docket does not reflect any further activity with respect to the motion requesting
that the Trustee hold all pre-confirmation funds.  However, the Trustee has represented to the
court in subsequent hearings that he is voluntarily holding the funds until this matter is resolved.
At the time of the dismissal, the Debtor had paid the Trustee $420.00 in chapter 13 plan
payments.

the Lewis Motion. Neither the Debtor nor J&C appealed the bankruptcy court order dismissing

the bankruptcy case.

Following the appeal, the bankruptcy court docketed a Memorandum pursuant to L.B.R.

8001-1(b).[4]  In the Memorandum, the court explained that the denial of the Lewis Motion was

based on 11 U.S.C. §349(b), which provides, in pertinent part:

> Unless the court, for cause, orders otherwise, a dismissal of a case other than
> under section 742 of this title –
> . . .
> (3) revests the property of the estate in the entity in which such property was
> vested immediately before the commencement of the case under this title.

In re Lewis, Bky. No. 04-36778, slip op. at 3 (Bankr. E.D. Pa. December 15, 2005).  The court

also observed: "I am not unmindful of the difficulty debtor's counsel may sometimes face in

collecting unpaid fees in dismissed chapter 13 cases; however, compelling the chapter 13 trustee,

and inviting the Court, to join the fee collection process under these circumstances is not

appropriate."  Id., slip op.  at 4 n.4.

On February 7, 2006, while the district court appeal was pending, J&C filed an

Application for Compensation ("the Lewis Application") in the bankruptcy court requesting the

allowance of compensation.  The Lewis Application is confusing.  It refers to "the original

retainer" of $1,986 as well as  "non-standard fees" (a term that reads like a term of art but which

is unknown in this court) of $1,762.  The Application then "request[s] an allowance of $420."  In

another paragraph, it states that "the total of both standard and non-standard fees is $1,762.00

and expenses total $0.00, (a total of $1,762.00) [and] requests a total allowance of $420."  The

---

[4]  The decision was rendered by the Hon. Kevin J. Carey, prior to his appointment to the
U.S. Bankruptcy Court for the District of Delaware.

Application does include time records, which I interpret to state that various attorneys in the firm collectively expended 7.3 hours in providing services to the Debtor during the period February 2, 2005 through January 17, 2006. The services centered on the lessor's motion for relief from stay, the Trustee's Motion to Dismiss and the unsuccessful effort to obtain confirmation of the proposed chapter 13 plan.

It appears that J&C requests an allowance of $420.00, based on the practicality that the Trustee has only $420.00 on account derived from the the Debtor's pre-confirmation chapter 13 plan payments. I infer that the point of the Application is that the reasonable fee earned by J&C exceeds the initial retainer of $306 by at least $420.

On March 7, 2006, the district court vacated the bankruptcy court's order denying the Lewis Motion. The district court stated:

> Collectively, sections 330(a), 503(b) and 1326(a) permit attorneys' fees and other administrative expenses be deducted from funds held by the Trustee before the balance is returned to the debtor, even when the case is dismissed before a plan is confirmed. The bankruptcy judge, however, never discussed what impact, if any, the characterization of attorneys' fees as an administrative expense has on section 349(b)(3)'s requirement of reversion of funds to the debtor. Although the Bankruptcy Court relied on section 349(b)(3) and raised justifiable concerns about judicial administration, the record is not adequate to explain whether the disallowance of counsel's requested fees was made in light of the Bankruptcy Code's language [that] attorneys' fees may qualify as administrative expenses subject to disbursement prior to reversion of funds to the debtor. Because the Bankruptcy Court made no explicit reference to nor addressed the interaction of all the relevant Code provisions, I am reluctant to rule on this issue in the absence of any record of such consideration.

In re Lewis, 2006 WL 562970, at *2 (E.D. Pa. March 7, 2006) (footnotes omitted).

The district court vacated the Bankruptcy Court Order and remanded the matter to this court:

to make findings and provide further explanation to support its reasoning. . . .
Therefore, on remand, the Bankruptcy Court shall make appropriate findings as to
whether 11 U.S.C. §330(a), 503(b) and 1326(a) permit an award of attorneys' fees
in cases dismissed prior to plan confirmation and the timeliness of [J&C's]
application for attorney's fees filed on February 7, 2006 in light of 11 U.S.C.
§503(a).

Id. at *2.

After the return of the appeal to the bankruptcy court from the district court on April 10,

2006, a hearing was held on May 9, 2006. The Debtor did not attend the hearing. No formal

evidence was offered by any party in interest during the hearing.

**B. Nesmith**

James D. Nesmith, Jr. filed a voluntary petition under chapter 13 of the Bankruptcy Code

on October 21, 2004. In the statement filed pursuant to Fed. R. Bankr. P. 2016(b), J&C disclosed

the following:

> 1.   . . .
>
> **For legal services, I have agreed to accept.....................................$1,986.00**
> **Prior to the filing of this statement I have received......................$ 456.00**
> **Balance Due.................................................................................$1,530.00**
>
>    . . .
>
> **5. In return for the above fee, I have agreed to render legal service for all aspects of**
> **the bankruptcy case, including:**
>
> **a. Analysis of the debtor's financial situation, and rendering advice to the**
> **debtor in determining whether to file a petition in bankruptcy;**

b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;

c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;

d. Representation of the debtor in adversary proceedings and other contested bankruptcy matters.

e. Other: $194 filing fee has been paid

6. By agreement with the debtor(s), the above-disclosed fee does not include the following services: . . . .[5]

All three chapter 13 plans filed by the Debtor were designed primarily to cure a residential mortgage prepetition payment delinquency, estimated in the plan to be approximately $13,000, while the Debtor made post-petition plan payments directly to the mortgage lender.[6] See 11 U.S.C. §1322(b)(5).

The docket reflects a substantial amount of activity in this chapter 13 case, including:

- two separate Motions to Dismiss filed by the Trustee, the hearings on which were continued numerous times between March 2005 and February 2006;

- the filing of two amended chapter 13 plans by the Debtor (both titled "Amended Chapter 13 Plan;"

- a Motion for Relief from the Automatic Stay filed by a home mortgage lender, which by the court granted by order entered September 1, 2005;

_____

[5] No excluded services were identified in Paragraph 6 of the 2016(b) Statement.

[6] The Debtor's estimate was relatively close to the amount of the arrears set forth in the proof of claim filed by the mortgage lender.

- a Motion to Reimpose the Automatic Stay filed by the Debtor, which was filed on November 29, 2005 and withdrawn on January 16, 2006;

- continuances of the confirmation (originally scheduled for April 5, 2005) to May 17, 2005, June 14, 2005, July 26, 2005, August 16, 2005, September 20, 2005, November 1, 2005, November 29, 2005, December 20, 2005, January 17, 2006 and February 7, 2006.

On October 13, 2005, after relief from stay was granted but before the Debtor filed the Motion to Reimpose the Stay, J&C filed a Motion to Approve the Distribution of Pre-Confirmation Payments Held by the Chapter 13 Standing Trustee to Debtor's Counsel for Outstanding Legal Fees. That Motion was withdrawn on November 16, 2005.

On February 7, 2006, the court signed an order dismissing this bankruptcy case. The order was entered on the docket on February 8, 2006. As of that date, the Debtor had made $3,735.57 in chapter 13 plan payments to the Trustee.

Two days later, on February 10, 2006, J&C filed another Motion to Approve the Distribution of Pre-Confirmation Payments Held by the Chapter 13 Standing Trustee to Debtor's Counsel for Outstanding Legal Fees ("the Nesmith Motion"). On March 14, 2006, a hearing was held on the Nesmith Motion. The court entered an order directing J&C to file an application for compensation pursuant to 11 U.S.C. §330 and Fed. R. Bankr. P. 2016(a). Later that day, J&C filed an Application for Compensation ("the Nesmith Application"), requesting the allowance of compensation in the amount of $3,500.

A hearing on the Nesmith Motion and the Nesmith Application was held on May 9, 2006. The Debtor attended the hearing, but was unrepresented with respect to the Nesmith Motion and the Nesmith Application. In response to a question from the court, the Debtor stated that he

-8-

believed that he was entitled to a return of $2,000 of the $3,735.57 held by the Trustee. No

formal evidence was offered by any party in interest during the hearing.


### III. RELEVANT STATUTORY PROVISIONS AND RULES OF PROCEDURE

To resolve the disputes before me, I must consider the meaning and interrelationship of

several different provisions of the Bankruptcy Code and rules of procedure.

Since J&C seeks a distribution on account of counsel fees allegedly earned in

representing the bankruptcy debtors in the two matters before me, the starting point is 11 U.S.C.

§330. Section 330 governs the award of compensation to attorneys and professionals appointed

to assist the trustee in administering the bankruptcy estate. However, section 330(a)(4)(B) also

provides for the allowance of compensation to the debtor's attorney in a chapter 13 case (even

though the debtor's counsel is not a professional appointed to represent the bankruptcy estate):

> In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may
> allow reasonable compensation to the debtor's attorney for representing the interests
> of the debtor in connection with the bankruptcy case based on a consideration of the
> benefit and necessity of such services to the debtor and the other factors set forth in
> this section.

11 U.S.C. § 330(a)(4)(B).

The procedure for allowance of compensation is set forth in Fed. R. Bankr. P. 2016(a).

Under Rule 2016(a), counsel must "file an application setting forth a detailed statement of (1) the

services rendered, time expended and expenses incurred, and (2) the amounts requested." Fed.

R. Bankr. P. 2002(a)(6) provides that at least twenty (20) days notice must be provided for any

hearing on a request for compensation in excess of $1,000.00. Typically, applications for

compensation must include an itemization of the time expended by the applicant. E.g., In re

Smith, 331 B.R. 622, 633 (Bankr. M.D. Pa. 2005) (citing In re Fry, 271 B.R. 596, 602 (Bankr.

C.D. Ill. 2001).

In this district, the procedures of Fed. R. Bankr. P. 2016(a) are supplemented by local

rules. Local Bankruptcy Rule ("LBR") 2016-1, sets forth certain procedures for service, notice

and disposition of counsel fee applications. LBR 2016-2 also authorizes a summary procedure

for certain fee applications in chapter 13 cases. Specifically, if counsel's total request for

compensation (i.e., the sum of the prepetition retainer and the amount requested to be disbursed

by the chapter 13 trustee) is $2,000.00 or less, the local rules authorize counsel to file a "short

form" fee application, which requires only a description of services and a statement of the total

amount of time expended. Id. This summary process is commonly referred to as "no-look"

counsel fees. See generally In re Smith, 331 B.R. at 629-30 (discussing policy benefits and

dilemmas created by use of "no-look" methodology in allowing compensation, including the

need to establish appropriate fee levels for normal and customary services and a procedure for

allowing compensation in cases involving reasonable and necessary services that are non-

routine). On its face, LBR 2016-2 merely dispenses with the chapter 13 debtor's counsel

obligation to submit time records with a fee application. In practice, LBR 2016-2 may create a

presumptively reasonable counsel fee amount for those chapter 13 cases that achieve the entry of

a confirmation order.

The next relevant statutory provision is 11 U.S.C. §503(b)(2). Section 503(b)(2)

provides that after notice and hearing, the court may allow administrative expenses, including

"compensation and reimbursement awarded under section 330(a) of this title." Thus,

compensation allowed to the debtor's counsel in a chapter 13 bankruptcy case is an

administrative expense allowable under 11 U.S.C. §503(b), even though counsel is not appointed

by the court and represents the interests of the debtor, rather than the interests of the bankruptcy

estate. Compare Lamie v. U.S. Trustee, 540 U.S. 526, 124 S.Ct. 1023 (2004) (counsel for for

chapter 7 debtor not entitled to compensation under 11 U.S.C. §330 unless counsel is employed

pursuant to 11 U.S.C. §327).

Finally, there are two additional Code provisions that govern the disposition of assets in

the bankruptcy estate in related circumstances.

Section 1326(a)(2) deals with the disposition of the plan payments held by the chapter 13

trustee prior to confirmation of a plan and provides, in pertinent part:

> A payment made under this subsection shall be rtained by the trustee until
> confirmation or denial of confirmation of a plan. If a plan is confirmed, the trustee
> shall distribute any such payment in accordance with the plan as soon as practicable.
> *If a plan is not confirmed, the trustee shall return any such payment to the debtor,*
> *after deducting any unpaid claim allowed under section 503(b) of this title.*

11 U.S.C. §1326(a)(2) (emphasis added)[7]. The parties' arguments have centered on the third

sentence of §1326(a)(2).

Section 349(b) addresses the disposition of estate assets upon the dismissal of a

bankruptcy case and provides:

---

[7] Section 1326(a)(2) was amended by the Bankruptcy Abuse Prevention and Consumer
Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23, 83 (2005) ("BAPCPA"), effective as to
cases filed beginning October 17, 2005. Both cases before me filed prior to October 17, 2005.
Therefore, the text quotes §1326(a)(2) as it stood pre-BAPCPA.

Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title--

. . .

(3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

11 U.S.C. §349(b)(3).

## IV. CONTENTS OF THE PARTIES

J&C's argument may be summarized as follows:

1. Even after dismissal of a case, the court retains jurisdiction to address the disposition of estate property.

2. Under §349(b), the court has discretion to modify the automatic revesting of estate property (in this case, the undistributed chapter 13 plan payments) in the entity in which the property was vested prepetition.[8]

3. In determining whether to exercise the authority granted to the court by §349(b), the court should be influenced by the policy reflected in §1326(a)(2) — which governs cases in which a chapter 13 plan is not confirmed — and which provides for the payment of administrative expenses allowed under §503(b) before the monies derived from chapter 13 plan payments are returned to a debtor.

4. The court should exercise its authority under §349(b) to override the automatic revesting of

---

[8] There is no suggestion that the funds held by the Trustee in any of the cases before me are derived from an entity other than the debtor. Therefore, on occasion, for ease of reference in this Memorandum Opinion, I will refer to the revesting of the funds "in the debtor," even though §349(b) actually provides for revesting "in the entity in which the property was vested prepetition."

the estate assets in the debtor and direct that administrative expenses be paid before any funds

are returned to each Debtor.

The Trustee's arguments may be summarized as follows:

1. After dismissal of the cases before the court, the court lacks jurisdiction to consider the
   disposition of the funds held by the Trustee because the dismissal order did not specifically
   retain jurisdiction over any estate property.

2. Even if there is jurisdiction following dismissal, where J&C had not even filed a fee
   application prior to dismissal, there were no allowed administrative expenses at the time of
   dismissal. Thus, even if, upon dismissal under §349(b)(3), allowed administrative expenses
   should be paid before the remainder of the funds revest in the debtors as provided in
   §1326(a)(2), J&C did not satisfy the requirements of §1326(a)(2) because counsel fees had
   not been allowed as an administrative expense at the time of dismissal.[9]

3. In any event, J&C has not established "cause" for overriding the automatic revesting of estate
   property in the debtor pursuant to 11 U.S.C. §349(b)(3).

There are reported decisions that support arguments advanced by both sides in this

dispute. Among the cases that provide some support to J&C's position are: In re Steenstra, 307

B.R. 732, 738 (1st Cir. B.A.P. 2002) (although the revesting provisions of § 349 and § 1326(a)(2)

would place the subject funds back in the hands of the debtor, the revesting is not immediate or

automatic; pursuant to §1326(a)(2), the chapter 13 trustee must complete the administration of

---

[9] The Lewis Motion, for distribution of the pre-confirmation funds, was filed before
dismissal of the case. The Nesmith Motion was filed after dismissal of the case.

the case, including making payments for expenses related to the administration of the estate); In re Lampman, 276 B.R. 182, 184 (Bankr. W.D. Tex. 2002) (in case involving voluntary dismissal after confirmation, court assumes that in a pre-confirmation dismissal, administrative expenses are paid before funds revest in the debtor); In re Doherty, 229 B.R. 461, 463-65 (Bankr. E.D. Wash. 1999) (under §349(b)(3), the trustee must complete case administration before funds revest in the debtor, providing the court with either implied or ancillary court jurisdiction – even in the absence of express retention of jurisdiction in the dismissal order –   to determine entitlement to allowance of administrative expenses); In re Oliver, 222 B.R. 272, 274 (Bankr. E.D. Va. 1998) (in case in which counsel fees were allowed by order entered simultaneously with the dismissal order and prior to post-dismissal distribution of funds and then a creditor garnished the funds held by the trustee, court gave primacy to §1326(a)(2) and ordered the funds to be paid to the attorney on account of the allowed fee with the balance paid to the debtor); In re DeLuca, 142 B.R. 687, 691 (Bankr. D.N.J. 1992) (where request was made for court to determine entitlement to attorney compensation at the dismissal hearing, court found "cause" to retain jurisdiction after dismissal of case in order to award fees); Matter of Mandalay Shores Co-op Housing Association, 60 B.R. 22 (Bankr. M.D. Fla. 1986) (in chapter 11 case, court's dismissal order expressly retained jurisdiction to rule on counsel's pending fee applications).

The Trustee argues that the cases are distinguishable because they involve fact patterns in which either a fee award already had been entered when the case was dismissed or the court expressly provided in the dismissal order for retention of jurisdiction in order to award fees.[10]

---

[10] These distinctions may not apply to certain principles expressed in Lampman. However, Lampman is distinguishable as a post-confirmation dismissal case, which renders the third  sentence of §1326(a)(2) inapplicable, at least on its face. Also, the Lampman court

Instead, the Trustee urges that the court follow decisions which suggest that the court's authority

is limited if a dismissal order is entered prior to the award of counsel fees or without an express

retention of jurisdiction to decide an outstanding fee application. See In re M.O.D., Inc., 170 B.R.

465 (Bankr. M.D. Ala. 1994) (court lacks jurisdiction to consider chapter 11 debtor's counsel's

fee application where dismissal order did not provide for court to exercise its jurisdiction);

Matter of Talandis, 95 B.R. 108 (Bankr. S.D. Iowa 1989) (same).

---

emphasized the need for debtor consent before the trustee would be authorized to distribute funds
to the debtor's counsel (rather than the debtor) after dismissal of the case. In the cases before me,
J&C's asserted entitlement to a distribution is not dependent, in J&C's view, on debtor consent.

    The Lampman court went beyond deciding the case before it and announced its intent to
follow a particular procedure by which a debtor's counsel could request payment from
undistributed funds in a case in which a chapter 13 plan has not been confirmed at the time of
dismissal of the case. In doing so, the court appeared to be engaged in the process of "local
rulemaking" via judicial opinion. The court described the new procedure as follows:

> [O]n motion to voluntarily dismiss prior to confirmation, the debtor's attorney
> must also move for allowance of its fees, and furnish sufficient documentation to
> permit the court to rule on whether the fees should be allowed. The motion must
> be countersigned by the debtors, to assure the court that the debtors are aware of
> the fees being requested, and concur in their payment. The order granting
> voluntary dismissal must contain the following language:
>
> > The attorneys' fees requested are hereby allowed as an administrative
> > claim, and are to be deducted from any funds on hand with the Chapter 13
> > Trustee and paid over to the attorneys. The allowance is, however,
> > contingent upon the Chapter 13 Trustee having the right to object to the
> > allowance of the claim within ten (10) days of the entry of this order. The
> > Chapter 13 Trustee may waive the right to object by tendering the fees
> > allowed. If the Chapter 13 Trustee timely objects, then the trustee shall
> > retain the funds deducted, pending a ruling by the court on the objection.
> > The court by this order, retains continuing jurisdiction to adjudicate any
> > objections to the allowance of fees notwithstanding the dismissal of the case.

276 B.R. at 185.

-15-

## V. **THE RECENT DECISION IN THIS DISTRICT IN *IN RE RAGLAND***

After the hearing held on May 9, 2006 in both cases, and while the Nesmith Motion, the

Nesmith Application, the Lewis Motion and the Lewis Application were under advisement in this

court, another bankruptcy court in the district issued a Memorandum decision explaining the

basis for its ruling in two cases. See In re Ragland, Bky. No. 05-18142BIF (Bankr. E.D. Pa. May

25, 2006) and In re Neil, Bky. No. 05-31361 (Bankr. E.D. Pa. May 25, 2006) (collectively,

"Ragland"). In its Memorandum decision,[11] the Ragland court addressed some of the same issues

involving J&C's efforts to access undistributed pre-confirmation chapter 13 plan payments as are

presently before me. In my discussion, I find it useful to describe the facts, reasoning and

holding of the thoughtful Ragland decision.

The facts in Ragland and its companion case, Neil, are the same as those in Nesmith. In each

of the three cases, the dismissal order was entered prior to the confirmation of a chapter 13 plan.

Each dismissal order was unconditional. The orders did not purport to retain jurisdiction over any

matters. They did not expressly override the ordinary functioning of 11 U.S.C. §349(b)(3) with

respect to the revesting of estate property in the Debtor. Furthermore, at the time of each dismissal,

J&C had not filed an application for compensation under 11 U.S.C. §330. Rather, in all three cases,

within three days of the dismissal order, J&C filed a motion requesting that the court direct the

Trustee to make a distribution to J&C on account of unpaid counsel fees allegedly earned by J&C

---

[11] The Ragland written Memorandum is reported on the website maintained by the
bankruptcy court in this district and may be accessed at the following URL:
http://www.paeb.uscourts.gov/pages/pubopins/pdf/ragland_05-18142_neil_05-31361fee_disburs
ejurisdiction.wo.pdf

in the course of the bankruptcy representation.[12]

In its analysis, the Ragland court began with the proposition that as a general rule, the bankruptcy court lacks jurisdiction over proceedings related to the bankruptcy after dismissal of the underlying case. Slip op. at 11 (citing In re Smith, 866 F.2d 576 (3d Cir. 1989)). The court reasoned that if dismissal usually results in the relinquishment of jurisdiction over pending proceedings, the principle applies with greater force to a proceeding that had not even been commenced at the time of dismissal.

The court's logic leads to the conclusion that in Ragland, Neil (and now Nesmith), where no proceeding had been instituted by J&C at the time of the entry of an unconditional dismissal order, the court lacks jurisdiction over J&C's post-dismissal motion, unless some other legal principle supports the existence of jurisdiction. The court then discussed three possible sources of jurisdiction.

First, the court looked to §349(b)(3), describing it as "a statutory exception to the notion that dismissal of a case ends all administration of the bankruptcy estate." Slip op. at 12. If the court "orders otherwise" under §349(b)(3), property that would otherwise have revested in the debtor remains in the estate, thereby providing subject matter jurisdiction to resolve disputes relating to that property. Id. at 13;[13] see 28 U.S.C. §1334(e) (bankruptcy court has exclusive jurisdiction of property

---

[12] The procedural history in Lewis is different. In Lewis, the Lewis Motion (requesting that the court direct the Trustee to make a distribution to J&C on account of unpaid counsel fees allegedly earned by J&C in the course of the bankruptcy representation) was pending before the court when the case was dismissed. The order denying the Lewis Motion was appealed and remanded. J&C did not appeal the dismissal order itself and, through the passage of time, that order has become final for purpose of appeal. See Fed. R. Bankr. P. 8002(a). The significance of the different procedural posture of Lewis is discussed below in Part VI.A.

[13] In support of this proposition, the Ragland court cited In re Gregory, 214 B.R. 570 (S.D. Tex. 1997); In re Elgin's Paint & Body Shop, Inc., 2000 WL 33710257 (Bankr. D.S.C. 2000); In re Halpern, 229 B.R. 67 (Bankr. E.D.N.Y. 1999); Matter of Samford, 125 B.R. 230

of the estate). However, the dismissal orders in the <u>Ragland</u> and <u>Neil</u> cases did not "order

otherwise." Consequently, all of the estate property revested in the debtors. In the absence of any

estate property, the court concluded that it lacked power to award funds to J&C. <u>Id.</u> at 13 (citing

<u>In re M.O.D., Inc.</u>, <u>supra</u>). The court contrasted the procedural posture of the case with other cases

in which the court had expressly retained jurisdiction to decide a fee application, thereby overriding

the otherwise self-effectuating revesting operation of §349(b)(3).[14]

Next, the court considered whether the principle of ancillary jurisdiction provided a basis to

consider the post-dismissal request for an award of compensation. The court acknowledged the

existence of caselaw that suggests that a bankruptcy court has the power to rule on a counsel fees

matter even if it is first raised after dismissal and the dismissal order did not expressly retain

jurisdiction over the subject.[15] However, the court looked for guidance in the Supreme Court's

decision in <u>Kokkonen v. Guardian Life Insurance Co.</u>, 511 U.S. 375 (1994) and concluded that in

the context of a post-dismissal counsel fee request, the only basis for the exercise of ancillary

jurisdiction would be to enable the court to manage its proceedings, vindicate its authority or

effectuate its decrees. Slip op. at 15-16. Because proceedings relating to the award of counsel fees

were not initiated prior to the dismissal of the case, the court found the exercise of ancillary

jurisdiction to be inappropriate.

---

(Bankr. E.D. Mo. 1991).

[14] The court cited <u>In re Fox</u>, 140 B.R. 761 (Bankr. D.S.D. 1992); <u>Matter of Talandis</u>, 95 B. R. 108 (Bankr. S.D. Iowa 1989); <u>Matter of Mandalay Shores Co-op Housing Association</u>, 60 B.R. 22 (Bankr. M.D. Fla. 1986). Slip op. at 14.

[15] The court cited <u>In re Taylor</u>, 884 F.2d 478 (9th Cir. 1989); <u>In re Dahlquist</u>, 751 F.2d 295 (8th Cir. 1985); <u>In re Fox</u>,140 B.R. at 762 ; <u>In re Fricker</u>, 131 B.R. 932, 937-38,(Bankr. E.D. Pa. 1991). Slip op. at 15.

Finally, the court considered the possibility that reconsideration of the dismissal order under Fed. R. Bankr. P. 9024 might provide the court with jurisdiction over a dispute initiated after dismissal. Slip op. at 17 (citing <u>Matter of Hansler</u>, 203 F.3d 828 (Table) (5th Cir. 1999) (per curiam). However, in exercising the discretion accorded the court in considering whether to grant relief under Fed. R. Bankr. P. 9024 (which incorporates Fed. R. Civ. P. 60(b)), the court concluded that it would deny reconsideration because: (1) J&C is not precluded from trying to collect its fees from the debtor, before or after the funds are returned by the Trustee, and has a legal remedy against the debtor in state court, if necessary; (2) J&C had ample notice of the pending dismissal and could have taken action well in advance of the dismissal; (3) other than citation to §1326(a)(2), J&C did not demonstrate any "cause" for overriding the apparent presumption in favor of revesting of estate property in the debtor created by Congress in §349(b)(3) ; and (4) because other parties, who may have had no notice of pending dismissal hearing,[16] may similarly have a right to request the allowance of an administrative expense, reconsideration of the dismissal hearing would complicate case administration and cause additional expense to the chapter 13 trustee (who might not be able to be compensated for the additional work required).[17]

---

[16]  Fed. R. Bankr. P. 2002(a)(4) requires notice of dismissal hearings to all creditors in chapter 7, 11 and 12 cases, but does not requires such notice in chapter 13 cases.

[17]  Courts have held that 28 U.S.C. §586(e) and 11 U.S.C. §1326(a)(2), read together, preclude the chapter 13 trustee from taking any statutory commission from plan payments made in a case in which no confirmation order is entered.  <u>In re Miranda</u>, 285 B.R. 344 (Table), 2001 WL 1538003 (B.A.P. 10th Cir. 2001); <u>Matter of Ward</u>, 132 B.R. 417 (Bankr. D. Neb. 1991).

## VI.  J&C IS ENTITLED TO THE RELIEF REQUESTED IN *LEWIS*

### A.

J&C filed the Lewis Motion prior to the dismissal of the case, requesting a distribution from the pre-confirmation payments made by the Debtor to the Trustee.  The Lewis Motion was denied during the hearing on dismissal of the bankruptcy case.  The timing of the Lewis Motion distinguishes Lewis from Ragland.  Because the Lewis Motion was filed before dismissal of the case, the concerns expressed in Ragland regarding the exercise of jurisdiction to decide a fee application filed after the unconditional dismissal of a bankruptcy case are not germane.  Thus, consideration of the merits of the Lewis Motion -- whether J&C has established that "cause" exists under 11 U.S.C. §349(b)(3) to order that the property of the estate should not revest in the Debtor upon dismissal of the case and whether J&C is entitled to a distribution from the pre-confirmation plan payments held by the Trustee -- is appropriate.

However, another threshold question is whether the finality of the dismissal order in Lewis precludes consideration of the merits of J&C's request under §349(b)(3).  The dismissal order, as entered, did not modify the revesting of the estate assets in the Debtor pursuant to §349(b)(3).  The dismissal order was not appealed and is therefore, final.  The separate order, entered the same day, denying J&C's request for a pre-confirmation distribution was appealed timely by J&C,  later vacated by the district court and then remanded to the bankruptcy court.  The question, then, is whether, based on the principles expressed in Ragland, the finality of the dismissal order precludes further consideration of J&C's request under §349(b)(3) that the court exercise its power to override, for cause, the presumptive revesting of estate property in the Debtor.

I conclude that the appeal of the bankruptcy court's order denying J&C's request for a pre-

confirmation distribution was adequate to preserve J&C's asserted rights under §349(b)(3). Neither the Debtor nor J&C had any apparent desire or basis for appealing the dismissal of the bankruptcy case in order to extend the Debtor's use of the bankruptcy process as a means of financial rehabilitation. Thus, the only purpose of an appeal of the dismissal order would have been to preserve J&C's rights under §349(b)(3). However, the <u>Lewis Motion</u>, which was considered at the dismissal hearing, functioned as a request that the court order that the dismissal not result in the automatic revesting of estate property in the Debtor and was denied by separate order.

As I conceptualize it, the issues of dismissal of the case and the disposition of estate assets were bifurcated by the entry of two separate court orders. One of those orders (the dismissal order) became final while the other order (the order determining the disposition of the estate assets) was timely appealed. Although the underlying bankruptcy case has been dismissed, the question whether the court should exercise the power to override the automatic revesting of estate property and the proper disposition of estate property has never been finally determined. I am satisfied that the appeal of the separate order denying the <u>Lewis Motion</u> preserved the issue addressed by that order: J&C's entitlement to payment from the pre-confirmation plan payments.[18]

---

[18] Had I concluded otherwise, other thorny issues come to mind. In light of the procedural complexities in this case, would relief from the dismissal order under Fed. R. Bankr. P. 9024 have been appropriate, even if <u>Ragland</u> was correctly decided? If the finality of the dismissal order resulted in the revesting of the estate property in the debtor, was the revesting irrevocable as a matter of law? <u>Cf.</u> <u>In re Devore</u>, 223 B.R. 193 (9th Cir. B.A.P. 1998) (abandonment of estate property by operation of law pursuant to 11 U.S.C. §554 is irrevocable); <u>In re Ozer</u>, 208 B.R. 630 (Bankr. E.D. N.Y. 1997) (same).

**B.**

On the merits, the issue, as framed by J&C, is whether counsel for a chapter 13 debtor can establish that "cause" exists under §349(b)(3) for the court to intervene and modify the automatic revesting of estate property in the debtor upon the pre-confirmation dismissal of a chapter 13 bankruptcy case by alleging that counsel is entitled to the allowance of compensation for work performed in the unsuccessful chapter 13 case pursuant to 11 U.S.C. §1326(a)(2).[19] Resolution of the issue requires an inquiry into the relationship between 11 U.S.C. §349(b)(3) and 11 U.S.C. §1326(a)(2).

These two Code sections cover similar subject matter but provide for presumptively different outcomes with respect to the treatment of allowed administrative expenses.

Section 349(b)(3) provides that if a bankruptcy case is dismissed, the property of the estate revests in the entity in which such property was vested immediately before the commencement of the case (which usually but not always, will be the debtor) but that the court may modify the presumptive revesting by operation of law by "order[ing] otherwise, for cause." Section 349(b)(3) does not provide for any deduction of administrative expenses before the property revests in the debtor. The purpose of §349(b)(3) is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case. E.g., Matter of Petty, 848 F.2d 654 (5th Cir. 1988); In re Lewis & Coulter, Inc., 159 B.R. 188 (Bankr. W.D. Pa. 1988). However, a " precise restoration of position does not necessarily occur, however, since under Section 349(b) the Court may order otherwise for cause." In re Gilpin, 209 B.R. 490, 492 (Bankr. W.D. Mo. 1997).

---

[19] The court in Ragland did not decide this issue. Slip op. at 19 n.12.

By comparison, the text of §1326(a)(2) imposes a mandatory obligation on the trustee, apparently not subject to the modification of the court, to deduct any unpaid administrative expense allowed under section 503(b) from the undistributed plan payments before returning the balance of the funds to the debtor if a chapter 13 plan is not confirmed. One purpose of this provision is to encourage the use of chapter 13 by returning to the debtor post-petition assets that were devoted to the ultimately unsuccessful, unconfirmed chapter 13 plan, since those assets would not have been part of a chapter 7 bankruptcy estate on the date of filing. See Smith v. Strickland, 178 B.R. 524, 527 (M.D. Fla. 1995); accord, In re Bailey, 330 B.R. 775, 776 -777 (Bankr. D. Ore. 2005); In re Walter, 199 B.R. 390, 392 (Bankr. C.D. Ill. 1996). Another purpose, expressed by the mandatory deduction of allowed administrative expenses from the monies to be returned to the debtor, is to shift some of the risk of the failure of the case from administrative claimants to the debtor. See In re Barbee, 82 B.R. at 473.[20]

The key issue is whether the text of §1326(a)(2) was intended to apply in the context of the dismissal of a chapter 13 case or whether its application is limited to cases in which confirmation is denied without dismissal or of the chapter 13 case. Put more colloquially, the question is whether §1326(a)(2) or §349(b)(3) is the dominant Code provision for determining the rights of administrative claimants upon dismissal of a chapter 13 case. The answer to that question dictates whether allowed administrative expenses presumptively are to be paid from the undistributed plan

---

[20] In making this point in Barbee, Judge Ginsberg referred to §1326(a)(2) as being designed to shift some of the risk from "the trustee" to the debtor. The trustee may not be an intended beneficiary of the "deduction of allowed administrative expenses" obligation under §1326(a)(2). See Ragland, slip op. at 20 n.14. Nevertheless, Judge Ginsberg's observation about shifting the risk is valid vis a vis allowed administrative expense claimants, such as a debtor's attorney.

payments held by the chapter 13 trustee (pursuant to §1326(a)(2)) or whether an administrative claimant must establish "cause" before allowed its administrative expense is deducted from the monies on hand (pursuant to §349(b)(3)).

After considering the text of both provisions, I find neither competing interpretation of the statute to be fully satisfactory.[21] Thus, I must cobble together a construction of the statute which seeks to best carry out Congress' goals in both provisions and to harmonize the two provisions, if possible. See, e.g., In re Handel, 253 B.R. 308, 311 (1st Cir. B.A.P. 2000) (citing 2A N. Singer, Sutherland Statutory Construction § 46.05 (C. Sands 4th ed.1984)) (each part or section of a statute should be construed with every other part or section so as to produce harmonious whole).

Although the issue of statutory construction is a difficult one and cogent arguments can be presented in support of a contrary result, I conclude that: (1) §349(b)(3) is the controlling provision in determining the disposition of all estate property upon dismissal of a bankruptcy case; (2) the purpose of §1326(a)(2) – to surcharge the debtor for the allowed costs of administration if a chapter 13 plan is not confirmed – is a sufficient basis for the court to exercise its discretion under §349(b)(3) to override the presumptive revesting of the undistributed plan payments "for cause" upon dismissal of a chapter 13 case; and (3) if a request for the allowance of an administrative expense is pending at the time of dismissal of a chapter 13 case, the asserted entitlement ordinarily will constitute "cause" for the entry of an order modifying the presumptive revesting of estate property under §349(b)(3).    I elaborate below.

---

[21] Nor can I locate any legislative history which is helpful in explicating the relationship between §349(b)(3) and §1326(a)(2).

## C.

Based upon its structure, §1326(a)(2) can be interpreted to apply only in cases in which confirmation of a chapter 13 plan had been denied but the case has **not** been dismissed. This interpretation would leave §349(b)(3) as the operative Code provision upon dismissal of a chapter 13 case.

The subject matter of §1326(a)(2) is the proper disposition of the plan payments received by the chapter 13 trustee. Section 1326(a)(2) consists of three sentences, only the last of which is at issue in this case. By reading the third sentence in the context provided by the first two sentences, it is possible to conclude that §1326(a) is only intended to address the effect of the denial of confirmation, rather than the effect of dismissal.

The first sentence of §1326(a)(2) directs that the trustee retain all plan payments until confirmation or denial of confirmation. The second sentence then instructs the trustee as to the proper disposition of the plan payments if the plan is confirmed − specifically, the trustee is to make a prompt distribution in accordance with the plan. In this context, the third sentence might then have been intended to instruct the trustee as to the proper disposition of the plan payments if confirmation of the plan is denied, thereby completing the universe of possibilities in the context of plan confirmation. If construed this way, §1326(a)(2) would govern only the situation in which confirmation of the plan is denied, but the case is not dismissed (with §349(b)(3) then being the exclusive Code provision governing the disposition of estate property upon dismissal of a chapter 13 case).

While this interpretation of the statute has a certain appeal, it also presents several textual problems.

First, while the structure of §1326(a)(2) may suggest that it is limited to cases in which there

is an express grant or denial of confirmation, the text of the third sentence of §1326(a)(2) easily can

be read more expansively. The first sentence refers to "confirmation" or "denial of confirmation."

The second sentence refers to a plan that is "confirmed." If the third sentence were intended to apply

**only** to cases involving an overt denial of confirmation (as opposed to cases in which confirmation

is denied indirectly through dismissal of the case,[22] one would then expect the sentence to parallel

the first sentence and refer to the "denial" of confirmation, rather than the more general reference

to a plan that is "not confirmed."[23] However, it does not. Instead, the third sentence refers only to

a plan that is "not confirmed" and a chapter 13 case that is dismissed prior to confirmation of a plan

---

[22] I doubt that anyone would dispute the proposition that if confirmation of a plan is
denied and the case is not being dismissed, §1326(a)(2) is applicable. If denial of confirmation is
accompanied by leave to seek confirmation of an amended plan, the text of §1326(a)(2) requires
that the trustee return the undistributed plan payments to the debtor. Interestingly, it has never
been the practice of the chapter 13 trustee in this district to return the plan payments to the debtor
after the denial of confirmation if the debtor is granted leave to and proposes an amended plan
for confirmation. This apparent inconsistency between actual practice and the statute is not
especially troubling. Conceptually, the debtor may be said to have resubmitted the payments to
the trustee in connection with the amended plan or have waived the §1326(a)(2) right to a return
of the plan payments. If leave to propose an amended plan has been granted, the return of the
plan payments to the debtor while the debtor needs or desires to devote the funds to the proposed
amended plan could impede the debtor's rehabilitative efforts. Another situation in which
confirmation of a chapter 13 plan could be denied without dismissal of the case is when the
denial of confirmation is followed by conversion of the case to another chapter. Some cases have
invoked §1326(a)(2) after conversion of a case from chapter 13 to chapter 7. See, e.g., Smith v.
Strickland, 178 B.R. at 526-27 & authorities cited therein. See generally 11 U.S.C. §348(f)(1)(A)
(property of the estate in case converted from chapter 13 consists of property of the estate "as of
the date of the filing of the petition" that remains in the possession or control of the debtor as of
the date of conversion). In the conversion context, there may be some potential tension between
§1326(a)(2) and 11 U.S.C. §348(f)(1)(A). However, that issue is not before me.

[23] A parallel construction would read as follows: "If confirmation of a plan is denied, the
trustee shall return any such payment to the debtor, after deducting any unpaid claim allowed
under section 503(b) of this title."

necessarily encompasses a plan that is "not confirmed." This more expansive reading of the

provision also may be supported by the principle of statutory construction that "[i]t is generally

presumed that Congress acts intentionally and purposely when it includes particular language in one

section of a statute but omits it in another.' " BFP v. Resolution Trust Corporation, 511 U.S. 531,

537, 114 S.Ct. 1757 (1994) (quoting Chicago v. Environmental Defense Fund, 511 U.S. 328, 338,

114 S.Ct. 1588,(1994)).

Second, construing §1326(a)(2) narrowly and deferring to the more general language found

in §349(b)(3) is problematic because the literal terms of §349(b)(3) are difficult to apply to the

disposition of the undistributed, pre-confirmation plan payments made by chapter 13 debtors upon

dismissal. While such funds constitute property of the estate, often, the plan payments are derived

from postpetition earnings of the debtor, not prepetition assets. Since the funds did not exist as of

the commencement of the case (although once in existence, the funds became property of the estate

by virtue of 11 U.S.C. §1306(a)(2)), it is difficult to conceptualize how the funds can revest "in the

entity in which they [were] vested immediately before the commencement of the case," as §349(b)(3)

directs. In other words, if the property did not exist prepetition, how can it "revest" in the entity in

which it was vested prepetition? Thus, §349(b)(3) may not provide any instruction regarding the

trustee's proper disposition of at least certain types of undistributed plan payments in a chapter 13

case dismissed before confirmation.

One way to resolve the potential gap in §349(b)(3) would be to treat §1326(a)(2) and

§349(b)(3) as different provisions designed to provide for the disposition of different kinds of estate

property. Section 1326(a)(2) refers to the disposition of chapter 13 plan payments; §349(b)(3) refers

generally to all property of the estate. Thus, §1326(a)(2) may refer to a subset of the property

referred to more generally in §349(b)(3)[24] and provide for different treatment of plan payments upon

dismissal of a case than that provided for other types of estate property: §1326(a)(2) directs the return

of those monies derived from plan payments to the debtor after the deduction of allowed

administrative expenses while §349(b)(3) operates to revest all other estate property in the

prepetition entity in which the property had been vested. Viewed from this perspective, the two

provisions may be intended to work in tandem, with §1326(a)(2) surcharging the easily available,

liquid estate assets for administrative expenses of the case before the debtor receives a refund and

§349 providing for the disposition of assets by operation of law of assets that may well be illiquid,

without requiring that any party take any action with respect to any particular type of property, thus

fostering prompt and efficient case administration.[25]

Aside from the textual analysis set forth above, I observe that a number of reported cases

have employed the §1326(a)(2) mechanism to determine the proper disposition of pre-confirmation

funds held by the chapter 13 trustee upon dismissal of a case. In re Steenstra, 307 B.R. at 738; In re

Hall, 296 B.R. 707 (Bankr. E.D. Va. 2002); In re Lampman, 276 B.R. at 184; In re Harris, 258 B.R.

8 (Bankr. D. Idaho 2000); In re Doherty, 229 B.R. at 463; In re Oliver, 222 B.R. at 274; In re

---

[24] In a chapter 13 case prior to confirmation, property of the estate includes most legal
and equitable interests of the debtor in property as of the commencement of the case, see 11
U.S.C. §541(a)(1), as well as such property interests acquired after commencement of the case,
see 11 U.S.C. §1306(a). Unless the court orders otherwise, property of the estate vests in the
debtor upon confirmation. 11 U.S.C. §1327(b).

[25] Further support for this interpretation of the relationship between the two Code
sections may be found in the general principle that a more specific statutory provision (in this
case, §1326(a)(2)) should control a more general provision (§349(b)(3)) governing the same
subject matter, unless the statute as a whole demonstrates a contrary intention. E.g., In re
Combustion Engineering, Inc., 391 F.3d 190, 237 n.49 (3d Cir. 2004); United States v. City of
Chester, 144 F.2d 415, 422 (3d Cir. 1944); In re Gulevsky, 362 F.3d 961, 963 (7th Cir. 2004); In
re Hanson, 310 B.R. 131, 133 (Bankr. W.D. Wisc. 2004).

DeLuca, 142 B.R. at 691; In re Barbee, 82 B.R. 470 (Bankr. M.D. Ill. 1988).

Notwithstanding the foregoing discussion, treatment of §1326(a)(2) as the "dominant" Code provision upon dismissal of a chapter 13 case is not without its own textual and practical problems.

First and foremost, the plain language of the third sentence of §1326(a)(2) directs that plan payments be returned to the debtor "after deducting any unpaid claim **allowed** under section 503(b)." 11 U.S.C. §1326(a)(2) (emphasis added). The provision is written in the past tense. Thus, if the third sentence of §1326(a)(2) is operative when a chapter 13 case is dismissed and is applied literally, it requires a deduction from the plan payments to be returned to the debtor only if a court order was previously entered allowing an administrative expense.

In this district, it is the exceedingly rare chapter 13 case in which administrative expenses (most commonly, attorney's fees for the debtor's counsel) are formally allowed by the court prior to confirmation of the debtor's chapter 13 plan. There is a very good reason for this. Deferral of the allowance of professional compensation in a chapter 13 case until confirmation facilitates the court's task of applying the standards of reasonableness, benefit and necessity set forth in §330(a)(3)[26] and

---

[26] Section 330(a)(3) provides:

In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including--

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue,

(a)(4)(B).[27]    See 4 K. Lundin, Chapter 13 Practice §294.1, at 294-43 (3d ed. 2004). As one court
has observed:

> When a chapter 13 plan is confirmed, there is an obvious and demonstrated benefit
> to the debtor and, presumably, counsel's services contributed to completion of the
> case. In most cases, additional proof will not be needed. But when cases are
> dismissed prior to plan confirmation, Counsel must provide an explanation in the fee
> application and evidence that counsel provided substantial, valuable professional
> services including investigation, evaluation, and counseling that was intended and
> designed to achieve an objective appropriate for chapter 13 cases.

In re Phillips, 291 B.R. 72, 82 (Bankr. S.D. Tex. 2003).

Also, in chapter 13 cases, the trustee does not make any distribution from the plan payments

until "confirmation or denial of confirmation." 11 U.S.C. §1326(a)(2). Perhaps because payment

on account of allowed counsel fees will not occur until after confirmation, historically, the

bankruptcy court in this district has deferred ruling on pending fee applications in chapter 13 cases

---

> or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or
> otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation
> charged by comparably skilled practitioners in cases other than cases under this
> title.

[27] Section 330(a)(4)(B) provides:

> In a chapter 12 or chapter 13 case in which the debtor is an individual, the court
> may allow reasonable compensation to the debtor's attorney for representing the
> interests of the debtor in connection with the bankruptcy case based on a
> consideration of the benefit and necessity of such services to the debtor and the
> other factors set forth in this section.

until confirmation of the plan. The practice is certainly consistent with §1326(a)(2), if not compelled by that provision.[28]   In short, since payment of allowed compensation does not occur until after confirmation, there has been little incentive for counsel to file a fee application or for the court to rule on a fee application prior to confirmation.

If §1326(a)(2) were to govern the distribution of undistributed plan payments and were applied literally, one could expect the debtor bar to file fee applications much earlier in the chapter 13 process and press the court for pre-confirmation and pre-dismissal rulings on the fee applications. This would be an undesirable result as it would add complexity to the chapter 13 process and compel the expenditure of an inordinate amount of attorney and judicial resources on the fee allowance process.  These practical issues relating to the timing of the allowance of administrative expenses do not arise if confirmation is denied without dismissal of the bankruptcy case, thus reinforcing the notion that §1326(a)(2) may have been designed to apply only when a case is not dismissed.

My view, that the application of §1326(a)(2) upon dismissal of a chapter 13 case is

---

[28]  As a general principle, the timing of the actual payment of allowed administrative expenses (as opposed to the allowance of the administrative expenses) in bankruptcy cases rests within the sound discretion of the court.  See 4 Collier on Bankruptcy ¶503.03 (15th rev. ed. 2005); In re Dieckhaus Stationers of King of Prussia, Inc., 73 B.R. 969 (Bankr. E.D. Pa. 1987). Thus, absent §1326(a)(2), the court might otherwise have discretion to order a trustee to pay an allowed counsel fee in a chapter 13 case prior to confirmation.  The court's power to do so is questionable in light of §1326(a)(2) which, on its face, states that plan payments "shall be retained" by the trustee until confirmation or denial of confirmation.  It is not necessary in this case to decide whether §1326(a)(2) prohibits a pre-confirmation distribution on account of an allowed administrative expense from the plan payments held by the chapter 13 trustee.  I observe only that the practice in this district of deferring decisions on applications for professional compensation until the entry of a confirmation order in chapter 13 cases is consistent with §1326(a)(2) since no distributions are made by the trustee until after confirmation.

problematic, is also influenced by the existence and widespread use of LBR 2016-2 in this district.

This local rule dispenses with the requirement that counsel submit specific and detailed time records

in support of an application for compensation provided that the total compensation in the case does

not exceed $2,000.00. L.B.R 2016-2 provides benefits to both the bar (by providing a summary

process for allowance of compensation) and the court (by facilitating the conservation of judicial

resources). See In re Smith, 331 B.R. at 629. While not stated explicitly, the local rule is premised

on the notion that if the amount of the counsel fees charged are within the monetary ceiling set forth

in the rule, the compensation is presumptively reasonable given the outcome achieved: i.e.,

confirmation of the debtor's chapter 13 rehabilitative plan.

   If a plan is not confirmed, however, it is unlikely that use of the  so-called "no look" fee

allowance process under L.B.R. 2016-2 would be appropriate. Rather, if a request for compensation

is made in a case that will not be confirmed and is subject to dismissal, the court would have to

employ the traditional analysis of determining the reasonable amount of compensation, taking into

account the results achieved by counsel's efforts in a case dismissed without a confirmed plan, all

of the factors set forth in 11 U.S.C. §330(a)(3), 330(a)(4)(B) and any other relevant considerations.

See In re Phillips.

   In most chapter 13 cases in which pre-confirmation dismissal looms as a danger to the debtor,

it should be expected that the energies of the debtor's counsel, as the debtor's legal advocate, will

be focused on avoiding dismissal and obtaining confirmation of the debtor's chapter 13 plan. This

is appropriate since the purpose of counsel's endeavors is to achieve the goals of the debtor-client

rather than to maximize counsel's compensation. Counsel should not be encouraged to presume that

the case is futile and to shift his or her efforts to the protection of counsel's rights under §1326(a)(2)

-32-

by preparing and filing what may be an unnecessary application for allowance of compensation (employing a traditional lodestar analysis) and then pressing for an expeditious ruling on the application before a dismissal hearing. Often, the realization that dismissal is unavoidable will not occur until very close in time to the dismissal hearing. It is preferable, in a "failing" but potentially viable chapter 13 case, for the debtor's counsel to expend resources on "saving" the case and attempting to resolve the problems which threaten dismissal. It would be inconsistent with the overall purposes of the Code, and chapter 13 in particular, to construe §1326(a)(2) to create a disincentive for the debtor's counsel to continue to try to obtain confirmation of the debtor's proposed plan unless and until the debtor's counsel determines that such efforts would be futile.

In short, even if one concludes that the policy of §1326(a)(2) (i.e., the shifting of some of the risk of the failure of the case from administrative claimants to the debtor) is paramount, the dynamics and policy considerations described above make it undesirable to construe the statute to require that a request for allowance of administrative expenses be both filed **and** determined at the time of dismissal in order to give effect to that policy as is mandated by the plain language of §1326(a)(2). Such a requirement would force counsel for a chapter 13 debtor to invoke his rights as an administrative claimant under §1326(a)(2) so far in advance of a potential dismissal that it could interfere with counsel's representation of the debtor. And, as explained above, it also would impose needless expenditure of time and resources by both the bar and the bench. Since the text of the statute does not compel that construction, I am most reluctant to conclude that §1326(a)(2) is the controlling Code provision when a chapter 13 case is dismissed.[29]

---

[29] Another critique of the application of §1326(a)(2) in the dismissal context is based on the fact that on its face, it does not apply to the disposition of undistributed funds held by the

In light of difficulties presented in the application of either §349(b)(3) or §1326(a)(2) when a chapter 13 case is dismissed, I conclude that the best result is achieved by making use of the flexibility afforded to the court through the "for cause" provision in §349(b)(3). Section 349(b)(3) provides the court with the authority to control the disposition of the plan payments upon dismissal. The exercise of the court's discretion can be informed by the policies expressed in §1326(a)(2). Like the court in <u>Barbee</u>, I am persuaded that Congress intended to provide a measure of protection to administrative claimants in chapter 13 cases in which a plan is "not confirmed." In affording that statutory benefit to administrative claimants, I see no reason, as a matter of policy, to distinguish between cases that have an overt denial of confirmation from those which are simply dismissed.

For all of the reasons expressed above, I conclude §349(b)(3) is the Code provision that governs the disposition of all estate property upon dismissal of a chapter 13 case and that the policies expressed by Congress in §1326(a)(2) are best implemented through the exercise of the court's

---

chapter 13 trustee if a case is dismissed <u>after</u> confirmation, thus providing no special protections for unpaid administrative expenses after confirmation of the plan. At least one court considers that outcome "odd." <u>In re Lampman</u>, 276 B.R. at 184. However, there is a possible rational reason why Congress would distinguish between pre-confirmation and post-confirmation dismissals of chapter 13 cases. In the pre-confirmation context, there may be a greater likelihood of a significant accumulation of funds in the hands of the trustee available for distribution on account of administrative expenses. In the post-confirmation context, it may be less likely that funds will be accumulated by the trustee and be available for payment of administrative expenses since the trustee is required by the statute to distribute the plan payments pursuant to the provisions of the confirmed plan "as soon as practicable." 11 U.S.C. §1326(a)(2). In the post-confirmation context, Congress may simply have determined that the benefits of an expeditious completion of case administration outweigh the potential benefits of reserving undistributed plan payments for payment of administrative expenses, which is likely to be only nominal in amount. Thus, I do not consider the distinction odd. In any event, as long as the plain meaning of the provision does not read to an absurd result, the plain meaning is the preferred construction of the statute. <u>See</u> <u>Lamie v. U.S. Trustee</u>, 540 U.S. 526, 534, 124 S.Ct. 1023, 1030 (2004).

discretion under §349(b)(3). <u>See generally</u> <u>In re Thompson</u>, 418 F.3d 362 (3d Cir. 2005) (in

construing a statute, the court must not be guided by a single sentence or member of a sentence, but

look to the provisions of the whole law, and to its object and policy).

### D.

Application of the legal principles discussed above to this case is not difficult.

In this case, at the time of the dismissal, J&C's request for allowance of an administrative

expense had not been "allowed." Thus, even if §1326(a)(2) were the controlling Code provision,

J&C is not entitled to an order directing the Trustee to deduct any money from the undistributed plan

payments on account of allegedly unpaid attorney's fees. To hold otherwise would transform the

word "allowed" in §1326(a)(2) into the word "allowable" and that would be improper. However,

I find that the pendency of the <u>Lewis Motion</u> at the time of dismissal constitutes "cause" for the

exercise of the discretion accorded to the court under §349(b)(3).[30] Accordingly, I will enter an order

---

[30] The Trustee argues that the <u>Lewis Motion</u> should not be treated as an application for
allowance of compensation because it did not comply with the requirements of Fed. R. Bankr. P.
2016(a) and L.B.R. 2016-1, 2016-2. The Trustee's position is not unreasonable, but I am not
persuaded by it. The Trustee is correct that the <u>Lewis Motion</u> was procedurally deficient as an
application for compensation. Nonetheless, there could be little doubt that the intent expressed
in the filing was a request for allowance of compensation. Given the uncertainty and confusion
surrounding the issue of the allowance of the pre-confirmation compensation issue generally, I
consider it appropriate to give J&C the benefit of the doubt on the question and treat the <u>Lewis
Motion</u> as an application for compensation. <u>See generally</u> Fed. R. Bankr. P. 1001 (rules of
procedure "shall be construed to secure the just, speedy, and inexpensive determination of every
case and proceeding"). I note also that after the remand of the matter back to the bankruptcy
court, J&C attempted to remedy the procedural deficiency by filing a more traditional application
for allowance of compensation. <u>See</u> Part II.A. <u>supra</u> (referring to the <u>Lewis Application</u> (Docket
Entry #65 (filed February 7, 2006)).

that provides that pending further order of the court, the pre-confirmation plan payments held by the Trustee, shall not revest in the entity in which such property was vested immediately before commencement of the case.

As the court pointed out in Ragland, slip op. at 20 & n.13, there is another issue that merits consideration. The debtor's counsel, by virtue of the information available to him due to his role in the case, is likely to be in a far better position to recognize when a case is likely to be dismissed than the debtor's creditors and therefore, is also in a far better position to initiate a request that the court exercise its discretion under §349(b)(3). Creditors may have no advance notice that a case is likely to be dismissed. See Fed. R. Bankr. P. 2002(4) (no requirement that creditors receive notice of dismissal hearings in chapter 13 cases). Since some of the creditors may have the right to request the allowance of administrative expenses, it is possible that they "should receive notice that they too could seek payment from funds held by the trustee." Ragland, slip op. at 20. On the other hand, nothing prevents any creditor from seeking the allowance of an administrative expense at any time during the pendency of a chapter 13 case; a creditor need not be aware that a motion to dismiss is pending in order to exercise any rights it may have under 11 U.S.C. §503(b).

In exercising the discretion afforded to the court under §349(b)(3), I find it more equitable to require that all interested parties be given notice of the potential fund which exists for administrative expenses once the court intervenes to alter the presumptive revesting of estate property. I also consider it to be appropriate for such notice to be provided by the first party invoking the court's power under §349(b)(3), in this case, J&C.[31] Therefore, I will conduct a final

---

[31] The Trustee should not have to bear this expense. See Ragland, slip op. at 20 & n.14.

hearing with respect to the Lewis Application after notice to all parties in interest and direct J&C to provide appropriate notice.

After the disposition of the Lewis Application and resolution of any other issues that may arise with respect to the disposition of the pre-confirmation plan payments, I anticipate that the Trustee will be able to deliver the money in his possession to the proper parties and that this case will be ready to be closed.

E.

One last issue must be addressed before the Lewis Motion is ready for disposition. The issue arises from the procedural posture of the case.

This court's order denying the Lewis Motion was appealed. On appeal, the order was vacated and the matter was remanded to the bankruptcy court. The mandate of the district court, see slip op. at 6, supra, possibly could be read to limit my authority to making appropriate findings explaining the prior bankruptcy court decision (which was made by a different judge) and nothing more. However, I do not interpret the district court order to impose such a limitation, which allows me to reach a result which is contrary to that initially reached by my predecessor judge in this case.

I conclude that issuance of an order in this case modifying the presumptive revesting of all estate property under §349(b)(3) is within my authority and consistent with the district court's mandate because the district court did not decide any issue on appeal which bound this court. The district court only directed the bankruptcy court to provide a further explanation for the decision that was appealed. I also find it significant that the district court remanded the matter to the bankruptcy

-37-

court without retaining jurisdiction. In these circumstances, I conclude that the controlling legal

principle is that "a remand for an explanation of the lower court's decision to enable informed

review leaves the lower court free to change its mind." 18B C. Wright & A. Miller, Federal Practice

and Procedure 2d §4478.3, at 753 (2d ed. 2002) ("Wright & Miller") (citing Borchers v. C.I.R., 943

F.2d 22 (8th Cir. 1991); accord, In re Exxon Valdez, 1995 WL 328493 (D. Alaska, May 16, 1995).

Finally, I observe that if I were to issue this Memorandum Opinion without any court order, it is not

clear how this matter would come back to the district court for a dispositive ruling, since the court

did not retain jurisdiction.

For these reasons, I find that my plenary reconsideration of the issues raised in J&C's appeal

is consistent with the district court's mandate, thereby permitting the entry of another order by this

court addressing the subject matter. Of course, upon entry of the order accompanying this

Memorandum Opinion, any aggrieved party may file an appeal.

### VII. J&C IS NOT ENTITLED TO THE RELIEF REQUESTED IN *NESMITH*

As stated above, the operative facts in Nesmith are the same as those in Ragland.

Thus, if I were to follow Ragland, the proper result would be to deny the Nesmith Motion and the

Nesmith Application for lack of subject matter jurisdiction. I agree that with the Ragland court's

conclusion that a bankruptcy court lacks jurisdiction to determine the proper disposition of funds

held by the chapter 13 trustee, based upon the type of motion filed by J&C after the entry of the case

dismissal order. Therefore, as in Ragland, I will deny the Nesmith Motion. I address the issue in

order to briefly amplify the reasoning for the decision.

-38-

The Ragland court's conclusion that it lacked jurisdiction was premised substantially on its view that the funds in dispute were no longer property of the estate due to the entry of the unconditional order dismissing the bankruptcy case. Slip op. at 13-14. The filing of J&C's motion within three days after the entry of the dismissal order raises the question whether the motion stripped the dismissal order of its finality to the extent that the dismissal order purported to remove the pre-confirmation plan payments from the bankruptcy estate pursuant to the revesting provision of 11 U.S.C. §349(b)(3). If the order was not final for purposes of appeal, the pre-confirmation payments remained property of the estate and within the subject matter jurisdiction of the bankruptcy court. Cf. 11 U.S.C. §363(m) (explicitly proving that reversal or modification of order on appeal does not affect validity of sale or lease authorized by the order unless such authorization is stayed pending appeal).

The court in Ragland treated J&C's motion, filed within three days of the entry of the dismissal order, as a motion for relief from judgment or order under Fed. R. Bankr. P. 9024 and Fed. R. Civ. P. 60. If this characterization was correct, then the dismissal order became final if no appeal was filed "within 10 days of the date of the entry of the . . . order . . . appealed from." Fed. R. Bankr. P. 8001(a). If, however, the Nesmith Motion is properly characterized as a motion to alter or amend judgment under Fed. R. Bankr. P. 9023 (incorporating by reference Fed. R. Civ. P. 59(e)), the dismissal order was not final. This is because Fed. R. Bankr. P. 8002(b) provides that upon the filing of a motion to alter or amend judgment, "the time for appeal for all parties runs from the entry of the order disposing of the [motion]." See, e.g., Marta Group, Inc. v. County Appliance Co., Inc., 79 B.R. 200, 203 (E.D. Pa. 1987). If the Nesmith Motion was a Rule 59(e) motion, it stripped the dismissal order of its finality to the extent that it provided for the revesting of estate

assets. So long as the property had not revested, it remained property of the estate and the bankruptcy court retained jurisdiction over their disposition. See 28 U.S.C. §1334(e).

Fed. R. Civ. P. 59(e) provides the mechanism by which a party may file a motion to alter or amend a judgement after its entry. While Rule 59(e) covers a broad range of motions, its scope is limited to motions requesting a substantive alteration in the judgment. White v. New Hampshire Dept. of Employment Sec., 455 U.S. 445, 451, 102 S.Ct. 1162, 1166 (U.S.1982) ("federal courts generally have invoked Rule 59(e) only to support reconsideration of matters properly encompassed in a decision on the merits"); Harsco Corp. v. Zlotnicki, 779 F.2d 906, 908 (3d Cir.1985), cert. denied, 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986) ( "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence."); accord, Wright and Miller § 2810.1.

A court enjoys considerable discretion in deciding a Rule 59(e) motion as the rule does not specify the particular grounds by which a court may grant or deny it. Nutrition Management Services Co. v. Harborside Healthcare Corp., 2006 WL 1506244, at *2 (3d Cir. 2006). However, a Rule 59 motion should be granted sparingly. See Pennsylvania Ins. Guar. Ass'n v. Trabosh, 812 F.Supp. 522, 524 (E.D. Pa 1992); In re Savoie, 2006 W L 893610, at *1(Bankr. E.D. Pa. 2006). Generally, proper Rule 59 motions in the Third Circuit require either: (1) an intervening change in the controlling law; (2) new evidence available that may have not been available previously; or (3) the need to correct a clear error of law or to prevent manifest injustice. North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995) (citations omitted); accord, Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir.1999).

I conclude that the Nesmith Motion does not allege any grounds which bring it within the three categories identified by the Court of Appeals for Rule 59(e) motions. Therefore, I agree with the Ragland court's characterization of the motion as a motion under Fed. R. Bankr. P. 9024 and Fed. R. Civ. P. 60. Further, I agree with the Ragland court's analysis that the court lacks jurisdiction, that it is not appropriate to exercise ancillary jurisdiction in this case and that relief is not appropriate under Fed. R. Bankr. P. 9024 and Fed. R. Civ. P. 60. See Ragland, slip op. at 14-20 (court declines to exercise its discretion to exercise ancillary jurisdiction or grant relief under Rule 60 for untimely request for allowance of compensation in absence of any issues involving disgorgement of fees, any explanation why the motion could not have been filed prior to the dismissal of the case or other special circumstances which would render it equitable to consider the merits of a post-dismissal request).[32]

## V. CONCLUSION

Separate orders will be entered in Lewis and Nesmith consistent with this Memorandum Opinion.

Date:    July 24, 2006

ERIC L. FRANK
U.S. BANKRUPTCY JUDGE

---

[32] I do not endorse all of the court's reasoning in Ragland. Compare Part VI., supra with Ragland, slip op. at 19 n.12 & accompanying text.

-41-